Lefteri **POULIS** and Athena Poulis, his wife, Appellants,

v.

**STATE FARM FIRE AND CASUALTY COMPANY.**

**No. 83–5600.**

United States Court of Appeals, Third Circuit.

Argued April 3, 1984.

Decided Nov. 5, 1984.

---

George Retos, Jr. (Argued), Retos, Held & Associates, Washington, Pa., for appellants.

Paul K. Geer (Argued), Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for appellee.

Before GIBBONS, SLOVITER, Circuit Judges, and BISSELL, District Judge *.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal, as well as another decided today involving the same attorney and district court judge, *Scarborough v. Eubanks*, 747 F.2d 871, is brought from a final order dismissing the complaint with prejudice due to counsel's failure to meet court-imposed deadlines and other procedural requisites.

### I.

#### Background

Lefteri and Athena Poulis filed suit against State Farm Fire and Casualty Company (State Farm) in November 1981, in the Court of Common Pleas of Washington County, Pennsylvania, to recover under an insurance policy after fire damaged their home. State Farm removed the case to the United States District Court for the Western District of Pennsylvania based on diversity of citizenship. In its answer, it denied liability, asserting that plaintiffs

had intentionally caused the fire, had concealed and misrepresented information, and had not filed their action in time.

On March 12, 1982, the district court ordered that discovery would close June 14, 1982; that plaintiffs' pre-trial statement would be due July 5; and that defendant's statement would be due July 26. A pre-trial conference was set for August 13. The docket reveals no action by plaintiffs seeking discovery. On April 15, State Farm filed notice of service of interrogatories on plaintiffs. No answers to these interrogatories were or have ever been filed, and plaintiffs did not file their pre-trial statement by July 5 as required. Therefore defendant filed its pre-trial statement first, on July 28, together with a motion to compel answers to interrogatories. A member of the district judge's staff advised plaintiffs' counsel, George Retos, Jr., that the statement was overdue and Retos promised to submit a statement by the next day. He neither did so nor requested any extension. On August 5 the district court, *sua sponte*, dismissed the case with prejudice for plaintiffs' failure to comply with the orders to file the pre-trial statement.

Retos filed a pre-trial statement on August 9, together with a motion under Rule 60(b) to reconsider and set aside the dismissal, alleging that an illness prevented him from working between July 6 through July 17; that other attorneys could not have taken over because only Retos spoke Greek and could communicate with plaintiff Lefteri Poulis; that Retos' pregnant wife went into false labor on July 29 and 30, and that he had "inadvertently set aside the required work for the instant case on July 29, 1982, due to his concern for his wife" and was "render[ed] unable to prepare the necessary Pre-Trial Statement;" that on his return to work other tasks had backlogged; and that although he had dictated a statement on August 4, it had been mailed on August 6 when it was typed and ready.

* Hon. John W. Bissell, United States District Court for the District of New Jersey, sitting by designation.

The district court denied reconsideration. On appeal, this court vacated the order of dismissal. *Poulis v. State Farm Fire & Casualty Co.*, 714 F.2d 124 (3d Cir.1983) (*Poulis I*) (per curiam). We noted there was "no allegation that plaintiffs, as distinguished from their counsel, were in any way responsible for the failure to comply with the court's order." We recognized that in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2278, 49 L.Ed.2d 747 (1976), a dismissal was upheld where plaintiffs had acted in "flagrant bad faith" and counsel "had behaved with 'callous disregard' of [his] responsibilities," *id.* at 643, 96 S.Ct. at 2781, but observed that "[t]he case at hand is not as extreme."

We pointed out that in an earlier opinion, *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982), we had stated that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." However, because Retos' excuses failed to account for many days on which a pre-trial statement could have been filed, we observed that some sanction was "amply justified." Accordingly, we vacated the dismissal and remanded to permit the district court to consider alternatives to dismissal, stating, "Alternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency."

On remand, the district court ordered the parties to file briefs on appropriate alternative sanctions. Plaintiffs' brief, filed four days late, stated that such sanctions would be costs, attorneys' fees, and monetary penalties imposed on him, but argued that "[s]ince the Third Circuit has specifically assessed the costs of the appeal in this matter against plaintiffs' counsel personally, it has ruled on the sanctions which are to be applied in the instant matter [and] alternative sanctions are now inappropriate." App. at 10–11.

In its brief State Farm took a more reasonable position. It noted that "[i]n this case the defendant has been more preju-

diced by plaintiffs' failure to answer interrogatories then [sic] by its counsel's failure to file the Pre-Trial Statement on time." App. at 16. State Farm urged the court to reopen discovery so that it could "have the opportunity to examine plaintiffs' Answers to Interrogatories, conduct further investigation if necessary, and depose the plaintiffs or other witnesses known to plaintiffs if such action is deemed necessary and appropriate." App. at 15. State Farm suggested, "If discovery is reopened, State Farm believes there would be no need to utilize the *somewhat harsh remedy* of limiting or restricting plaintiffs' witnesses at trial." App. at 16 (emphasis added). In light of this court's order, State Farm requested an award of $750.00 in attorneys' fees which it incurred because of the dismissal and appeal, and sought a prospective limitation on interest due should it ultimately be held liable on plaintiffs' claim.

Significantly, in its brief State Farm further stated, "State Farm strongly believes that the most expeditious manner of disposing of this case can be provided by ruling on the Defendant's Motion to Dismiss which was filed on July 7, 1982," approximately three weeks following the close of discovery and which was denied by the district court because of its policy not to consider motions to dismiss filed more than two weeks after the close of discovery. App. at 16.

Notwithstanding the defendant's submission, the district court reinstated its *sua sponte* sanction of dismissal, stating that there was no appropriate alternative:

There are no costs which can be charged to plaintiffs' counsel at this point. Further, this was not a situation in which defense counsel was forced to make an unnecessary trip to court because of plaintiffs' counsel's failure to appear. The defendant has only been required to incur fees in an amount that would have been incurred if the case normally proceeded to this point. Thus, this is not an appropriate case for attorney's fees. Finally, the court finds no authority for

levying a fine against plaintiffs' counsel as a penalty. Rather than imposing fines and costs of [sic] other sanctions prior to dismissal, plaintiffs' counsel was afforded many opportunities to cure the problems, but he has failed to do so. Sanctions not being appropriate, the court has no alternative but dismissal to motivate plaintiff's counsel to comply with deadlines.

App. at 3–4 (footnotes and citation omitted). The district court intimated its displeasure with the remand in *Poulis I* but it was unequivocal in its disagreement with the remand in a similar case from another district, *Titus v. Mercedes Benz of North America*, 695 F.2d 746 (3d Cir.1982). The district court stated: "Judge Garth's dissent in *Titus*, indicates that deliberate, dilatory action is a basis for dismissal, even under *Donnelly*, and further indicates that the Circuit Court should only reverse such a decision for abuse of discretion.... [T]his Court *finds Judge Garth's dissent persuasive and adopts his dissent*, and the cases cited therein, as further support for this decision." App. at 5 (emphasis added).

■ We treat this extraordinary statement at the outset. Whatever may be the personal views of the district court as to the merits *vel non* of a decision of this court, the district court is not free to "adopt" the dissent. This court is strict in its adherence to the precedent of its earlier opinions. Our own Internal Operating Procedures are explicit and provide,

It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.

Internal Operating Procedures of the Court of Appeals for the Third Circuit, Chapter 8.C. If the judges of this court are bound by earlier panels, *a fortiori* district court judges are similarly bound. Recognition of the hierarchical nature of the federal judiciary requires no less.

Moreover the reported decisions of this court over the past two years evidence the consistency of this court's rulings emphasizing the extreme nature of a dismissal with prejudice or default judgment. *See Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir.1984); *In re MacMeekin*, 722 F.2d 32 (3d Cir.1983); *Madesky v. Campbell*, 705 F.2d 703 (3d Cir.1983); *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120 (3d Cir.1983); *Titus v. Mercedez Benz of North America*, 695 F.2d 746 (3d Cir.1982); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3d Cir.1982); *Farnese v. Bagnasco*, 687 F.2d 761 (3d Cir.1982); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir.1982).[1]

We recognize that recent literature exhorting the district judges to move litigation expeditiously by taking firm control and the 1983 amendments of the Federal Rules of Civil Procedure with their numerous references to sanctions may have contributed to premature dismissals or defaults. Although sanctions are a necessary part of any court system, we are concerned that the recent preoccupation with sanctions and the use of dismissal as a necessary "weapon" in the trial court's "arsenal" may be contributing to or effecting an atmosphere in which the meritorious claims or defenses of innocent parties are no longer the central issue. It does not further the goal of a court system, that of delivering evenhanded justice to litigants, to suggest, as did the district court here, that the plaintiffs would have a remedy by suing their counsel for malpractice, App. at 5, since this would only multiply rather than dispose of litigation.

■ We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions,

---

1. We believe it important to point out that we have not hesitated to affirm the district court's imposition of sanctions, including dismissals in appropriate cases, *cf. United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192 (3d Cir.1984) (default judgment) (in which Judge Garth dissented on the ground that the dispute was prematurely ended without being reviewed on the merits), although under our procedures that is often done by judgment order affirmance.

termed "extreme" by the Supreme Court, *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781, and are to be reserved for comparable cases.

## II.

### *Analysis*

In exercising our appellate function to determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, which have been enumerated in the earlier cases, and whether the record supports its findings: (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

We turn to apply these factors in the circumstances of this case.

1. The extent of the party's personal responsibility.

There has been no suggestion by any party or by the district court that the Poulis plaintiffs are personally responsible for the late pretrial statement, which was the basis for the dismissal. Indeed, Retos has acknowledged the delays were his responsibility and assigned as the reason his illness from July 6 through 17 and the subsequent false labor of his wife on July 29 and 30.

This is therefore unlike the *National Hockey League* case where the Supreme Court upheld the "extreme sanction of dismissal" after noting that there had been "flagrant bad faith" on the part of the plaintiffs as well as "callous disregard" by their counsel of their responsibilities. 427 U.S. at 643, 96 S.Ct. at 2781. However, the Poulis' lack of responsibility for their counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel. *See Link v. Wabash Railroad,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

2. Prejudice to the adversary.

As the district court stated, there has been prejudice to the defendant by the plaintiffs' counsel's conduct. The interrogatories were never answered nor were objections filed; defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first. App. at 4. The court's finding that "defendant encountered lack of cooperation from the plaintiff in areas where the plaintiff should cooperate under the spirit of the federal procedural rules," *id.,* is supported by the record.

3. A history of dilatoriness.

As noted above, this litigation has been characterized by a consistent delay by plaintiffs' counsel. Unlike the *Donnelly* case, for example, where there was only one failure to comply in a timely manner, *i.e.* in obtaining local counsel, in this case there has been a pattern of dilatoriness. Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made to the court. A history by counsel of ignoring these time limits is intolerable.

4. Whether the attorney's conduct was willful or in bad faith.

Although the district court concluded that "plaintiffs' counsel's conduct [was] of such a dilatory and contumacious nature to require dismissal," App. at 5, there is nothing in the record to support the "contumacious" finding. Nothing in the court's discussion preceding this conclusion is directed toward the willfulness issue but only toward dilatoriness. There has been

no suggestion or indication that counsel's illness during July 1982 and his wife's late pregnancy and false labor at the end of that month did not occur as he represented.

In the appellants' brief, counsel characterizes his conduct as "excusable neglect" and seeks to explain the district court's characterization of his conduct as "deliberate" and "contumacious" as the result of a "personality conflict" between counsel and the district judge. Appellants' brief at 8. He refers us to four recent appeals in which he allegedly "clashed" with the same district judge.[2] However, even in those cases in which we vacated the dismissal, the record showed that counsel failed to comply with the rules and deadlines imposed by the district court. Thus, while some disaffinity has apparently been engendered between the district judge and counsel we see no basis to hold the district judge responsible. Nonetheless, as noted at the beginning of this section, we also find no basis for terming counsel's conduct in this case "contumacious".

5. Alternative sanctions.

The district court concluded that it had "no alternative but dismissal" because no other sanctions were appropriate. The district court stated that there was no authority for levying a fine against plaintiffs' counsel as a penalty. *See Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir.) (in banc), *cert. denied,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).[3] However, the court also stated that "there are no costs which can be charged to plaintiffs' counsel at this point." This finding was erroneous. Defendant's counsel had asked the court to impose as a sanction the $750 attorney fee

which it had incurred in defending the appeal in *Poulis I.* The district court apparently assumed that the costs of that appeal had already been charged to plaintiffs' counsel. However, we had not assessed any attorney's fee as part of our imposition of appeal costs on plaintiffs' counsel personally.[4] The district court also could have imposed on plaintiffs' counsel the costs, including attorney's fees, of preparing the motion to compel answers to interrogatories and the brief on alternative sanctions, all of which were incurred because of the dilatoriness of plaintiffs' counsel.

Under the Federal Rules of Civil Procedure and the 1983 amendments, the district court is specifically authorized to impose on an attorney those expenses, including attorneys' fees, caused by unjustified failure to comply with discovery orders or pretrial orders. *See* Fed.R.Civ.P. 16(f), 37(a)(4), 37(b), 37(d) and 37(g). *See also* 28 U.S.C. § 1927. The most direct and therefore preferable sanction for the pattern of attorney delay such as that which the district court encountered in this case would be to impose the excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client, directly or indirectly. This would avoid compelling an innocent party to bear the brunt of its counsel's dereliction. Dismissal must be a sanction of last, not first, resort.

6. Meritoriousness of the claim.

In considering whether a claim or defense appears to be meritorious for this inquiry, we do not purport to use summary judgment standards. A claim, or defense,

---

**2.** In two of these cases, this one and *Scarborough v. Eubanks,* also decided today, 747 F.2d 871 (3d Cir.1984), the district court dismissed the complaint, and in the third, the court entered a default judgment against Retos' client, *Miller v. Blower,* No. 82–0757 (W.D.Pa. Feb. 2, 1983), *vacated and remanded,* 732 F.2d 146 (3d Cir.1984) (unreported). The fourth case, *United States v. Golna,* No. 81–179 (W.D.Pa.) *aff'd,* 714 F.2d 125 (3d Cir.1983) (unreported), was not appealed on the basis of any sanctions imposed by the district court.

**3.** This issue is presently pending before this court in *Eash v. Riggins Trucking, Inc.,* No. 83–5664 (order for in banc consideration filed Oct. 11, 1984).

**4.** It was a *non sequitur* for plaintiff to have argued in his brief on alternative sanctions filed with the district court that since we specifically assessed the costs of the appeal against him personally, we already ruled on the sanctions to be applied. If so, there would have been no basis for us to have remanded for precisely this purpose.

will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195; *Feliciano v. Reliant Tooling Co.*, 691 F.2d at 657; *Farnese v. Bagnasco*, 687 F.2d at 764.

■ In this case, the defendant suggested to the district court that the most expeditious way to process this litigation was to rule on its motion to dismiss plaintiffs' claim as untimely because it was not brought within a year of the loss, as required by the policy. The district court's denial of that motion because of its "policy ... not to consider motions to dismiss filed more than two weeks after the close of discovery," Order of August 2, 1982, appears to conflict with Fed.R.Civ.P. 12(h)(2) which permits a defense of failure to state a claim upon which relief can be granted to be raised by motion as late as at the trial on the merits. Since the motion was timely under Rule 12(h) because it was pleaded in the answer, its consideration by the district court might have avoided the entire controversy regarding the pretrial proceedings and the two appeals to this court, and could have given the parties a disposition on the merits.[5]

Certainly, the defense that the plaintiffs' claim must fail because it has not been brought within the one year limitation provision of the policy is, on its face, compelling. *See Schreiber v. Pennsylvania Lumberman's Mutual Ins. Co.*, 498 Pa. 21, 444 A.2d 647 (1982). In their complaint plaintiffs made no allegation that would avoid this facial untimeliness by invoking Pennsylvania's law of waiver of the time limit set forth in an insurance policy. *See Commonwealth v. Transamerica Ins. Co.*, 462 Pa. 268, 341 A.2d 74 (1975). Moreover, plaintiffs filed no answer to the motion to dismiss. For the purpose of evaluating the facial validity of the claim or defense, we

cannot rely on the vague and nonspecific statements in plaintiffs' pretrial memorandum that they would produce witnesses to show that defendant led them to believe they would not be barred from filing an action on the claim more than 12 months from the date of the fire. While we express no opinion on whether summary judgment or dismissal would have been warranted on this ground, the existence of a prima facie defense is a factor to be weighed along with the foregoing factors.

### III.

#### Conclusion

■ The above factors should be weighed by the district courts in order to assure that the "extreme" sanction of dismissal or default is reserved for the instances in which it is justly merited. In this case, although there was no contumacious behavior, the pattern of dilatory behavior is compounded by the plaintiffs' failure to file any answers to interrogatories, defendant was compelled to file its pretrial statement without such answers and without seeing plaintiffs' pretrial statement, and there is a prima facie defense to the claim. Under these circumstances, although we might not have reached the same result as did this district court judge, we cannot say that the district court abused its discretion in ordering the dismissal. Therefore, we will affirm the judgment of the district court.

---

5. In this connection we note the commendable procedure followed by Judge Grady of the U.S. District Court for the Northern District of Illinois, who has found that attention to some of the legal issues during a discovery conference called under Rule 26(f) has substantially reduced the need for discovery. *See* Grady, *Finding Our Way Through the Discovery Jungle*, 21 The Judges' Journal 4, 42–43 (1982).